**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| DataCard Corporation, a.,<br>Delaware corporation, | Civil No. 07-321 (DWF/AJB) |
| Plaintiff, | |
| v. | **MEMORANDUM<br>OPINION AND ORDER** |
| Softek, Inc., a Puerto Rico<br>corporation, | |
| Defendant. | |

_____

Jay W. Schlosser, Esq., and Jeffrey J. Keyes, Esq., Briggs & Morgan, PA, counsel for Plaintiff.

Anh Le Kremer, Esq., and Kerri J. Nelson, Esq., Holstein Kremer, PLLC, counsel for Defendant.
_____

**INTRODUCTION**

In this breach-of-contract case, Plaintiff DataCard Corp. ("DataCard") alleges that Defendant Softek, Inc. ("Softek") failed to pay for goods and services that DataCard delivered pursuant to an agreement between the parties. This matter is before the Court pursuant to Softek's Motion to Dismiss for Lack of Jurisdiction or, in the Alternative, Motion for Transfer of Venue. For the reasons set forth below, the Court denies Softek's motion.

## BACKGROUND

DataCard is a Delaware corporation with its principal place of business in Minnetonka, Minnesota.[1] DataCard designs, develops, and implements card issuance programs, including equipment, printers, software, and related supplies. Softek is a Puerto Rican corporation with its principal place of business in San Juan, Puerto Rico. Softek designs, develops, and implements automated information technology systems.

The relevant facts regarding this lawsuit began in February 2002, at which time the Puerto Rico Department of Health issued a request for proposals for the design and implementation of a healthcare smart-card program (the "Smart-Card Project"). The Smart-Card Project would allow citizens of Puerto Rico to obtain a smart card[2] that would contain identification and healthcare information about the cardholder and assist in the administration of the national healthcare program in Puerto Rico. The Smart-Card Project was divided into two phases—a Pilot Program and the "roll-out" phase. The Pilot Program involved implementing the Smart-Card Project at three to four selected sites in Puerto Rico. The roll-out phase called for implementation of the Smart-Card Project to the entire island of Puerto Rico.

---

[1]   According to DataCard, the Complaint mistakenly refers to DataCard as a Minnesota corporation.

[2]   A "smart card" is a plastic card that looks like a credit card and contains a computer chip that stores information that is retrievable though a software program.

Both Softek, DataCard, and other companies attended a pre-bid meeting in February 2002 at the Department of Health offices in San Juan, Puerto Rico. At that meeting, Softek representative and project locator, José Guzmán, met DataCard's Distribution Manager for Latin America, Dimas Cecilio. Guzmán and Cecilio met again at a conference and discussed the possibility of working together on the Smart-Card Project. Thereafter, Softek submitted a proposal for the design and implementation of the Smart-Card Project. According to the proposal, Softek would be the prime contractor, and Maximus, Inc. ("Maximus") and DataCard would be subcontractors. In May 2002, the Puerto Rican government awarded Softek the contract for the Pilot Program. As the prime contractor, Softek worked with Maximus who, in turn, purchased printers from DataCard and integrated the software it had developed into the purchased printers.

After successful completion of the Pilot Program, the Puerto Rican government issued a request for proposals to implement the roll-out phase of the Smart-Card Project. Thereafter, Softek asked DataCard if DataCard would be able to provide the printers, supplies, and software necessary to implement the roll-out phase. In September 2003, Guzmán and another Softek representative, Victor Salaman, traveled to Minnesota to meet with DataCard to discuss this possibility and payment issues.

Following this meeting, Softek selected DataCard to provide the printers, supplies, and software for the roll-out phase of the Smart-Card Project, thereby eliminating Maximus from the process. The parties then heavily negotiated a contract (the

"Subcontract Agreement") setting forth their respective obligations.[3] The parties executed the Subcontract Agreement on or about April 16, 2004. Specifically, Softek executed the Subcontract Agreement in Puerto Rico, and then faxed the agreement to DataCard, who then executed the Subcontract Agreement in Minnesota.

Pursuant to the Subcontract Agreement, DataCard agreed to manufacture and deliver printers and related supplies to Softek and to provide hardware maintenance for the printers. The Subcontract Agreement provides that it is governed by the laws of Puerto Rico and also contains a non-exclusive forum-selection clause, which states, "[t]he parties hereby expressly submit to the non-exclusive jurisdiction of and venue in the United States District Court for the District of Puerto Rico." (Aff. of Liz Wallace ("Wallace Aff."), Ex. 4, ¶ 13.11.) In addition, the Subcontract Agreement contains an integration clause, which states, "[t]his Agreement, including the Exhibits attached hereto, represents the complete agreement between the parties with respect to the subject matter hereof and supersedes any contemporaneous or prior written or oral understandings or agreements with respect hereto[.]" (*Id.* ¶ 13.5.)

---

[3] DataCard contends that the parties primarily negotiated the Subcontract Agreement by telephone, e-mail, and correspondence. Softek disputes this contention, asserting that 90% of the parties' negotiations occurred in San Juan, Puerto Rico. In particular, Softek identified two times when DataCard executives flew to Puerto Rico and engaged in negotiations.

Two Exhibits to the Subcontract Agreement also contain forum-selection clauses. First, the Software Maintenance Agreement ("SMA") contains an exclusive forum-selection clause in favor of Puerto Rico and further provides that it will be governed by the laws of Puerto Rico.[4] Second, DataCard and Softek entered into an End User Software License Agreement, dated April 23, 2004, which contains a non-exclusive forum-selection clause in favor of Minnesota and provides that it is governed under the laws of Minnesota.[5]

In addition to executing the Subcontract Agreement, the parties also entered into various other agreements over the course of their relationship that contained forum-selection clauses. Specifically, on March 12, 2004, Softek submitted a purchase order to DataCard to purchase printers and supplies in connection with the Smart-Card Project. Pursuant to the purchase order, Softek executed DataCard's Sales Order Form/Purchase Agreement, which included a non-exclusive forum-selection clause in

---

[4] Specifically, the forum-selection clause in the SMA states that the parties "submit to the exclusive personal jurisdiction and venue of the United States District Court for the District of Puerto Rico to resolve all disputes arising out of this Agreement." (Wallace Aff., Ex. 3.) Although DataCard asserts that it never executed the SMA, the Court nonetheless assumes that the SMA was in effect for the purposes of this motion because the Court's decision is the same either way.

[5] Specifically, the End User Software License Agreement provides that: "[t]he parties hereby submit to the non-exclusive jurisdiction and venue in the state or federal courts of Hennepin County, Minnesota with regard to any conflicts or disputes arising out of this Agreement." (Wallace Aff., Ex. 5.)

favor of Minnesota.[6]  Additionally, on March 18, 2004, DataCard and Softek entered into a Mutual Confidential Non-Disclosure Agreement, which contained an exclusive forum-selection clause in favor of Puerto Rico.[7]  Further, on April 29, 2004, DataCard, Softek, the Puerto Rico Health Insurance Administration, and the Puerto Rico Department of Health entered into a Mutual Confidential Non-Disclosure Agreement ("Second Mutual Confidential Non-Disclosure Agreement"), which contained a non-exclusive forum-selection clause in favor of Puerto Rico.[8]

On January 24, 2007, DataCard filed this lawsuit alleging breach of contract under the Subcontract Agreement.  Specifically, DataCard alleges that it fully performed its obligations to provide certain printers, supplies, and maintenance under the Subcontract Agreement, but that Softek has refused to pay for the printers, supplies, and maintenance. Softek now moves the Court to dismiss the claim against it pursuant to the exclusive forum-selection clause in the SMA in favor of Puerto Rico and, alternatively, for lack of

---

[6]  Specifically, the forum-selection clause in the Sales Order Form/Purchase Agreement, states:  "[t]he parties hereby expressly submit to the non-exclusive jurisdiction of and venue in the United States District Court for the District of Minnesota or the District Courts of Hennepin County, Minnesota."  (Wallace Aff., Ex. 2.)

[7]  Specifically, the forum-selection clause in the Mutual Confidential Non-Disclosure Agreement stated:  "[t]he parties voluntarily submit to the exclusive venue and jurisdiction of the Federal District Court for the District of Puerto Rico for any controversy related to this Agreement[.]"  (Wallace Aff., Ex. 1.)

[8]  Specifically, the forum-selection clause in the Second Mutual Confidential Non-Disclosure Agreement, stated:  "[t]he parties agree that in the event that controversies related to this Agreement reach the courts, the parties will submit to the non-exclusive jurisdiction of the courts of the Commonwealth of Puerto Rico, Tribunal of

personal jurisdiction. Alternatively, Softek moves the Court for an order transferring venue to the United States District Court for the District of Puerto Rico.

## DISCUSSION

### I. Motion to Dismiss

Softek moves to dismiss on the ground that the forum-selection clause in the SMA requires the case to be brought in Puerto Rico. Alternatively, Softek moves to dismiss on the ground that the Court lacks personal jurisdiction over Softek.

#### A. Whether the Forum-Selection Clause in the SMA Requires Dismissal

Softek contends that the Court should enforce the exclusive forum-selection clause in favor of Puerto Rico in the SMA and thereby dismiss DataCard's claim. Softek relies on language in the Subcontract Agreement, which provides, "[t]o the extent that the Exhibits contain terms or conditions that are more specific than these terms and conditions, the Exhibit terms and conditions shall control." (Wallace Aff., Ex. 4, ¶ 13.5.) Further, Softek points out that the SMA is an Exhibit to the Subcontract Agreement and contends that the form-selection clause in the SMA controls because it contains a term that is more specific than the forum-selection clause in the Subcontract Agreement. The Court rejects Softek's argument.

The SMA expressly provides that the exclusive forum-selection clause contained therein applies only to claims arising out of the SMA. Specifically, the SMA states, "[t]he parties hereby agree to submit to the exclusive personal jurisdiction and venue of First Instance, in San Juan, Puerto Rico." (Wallace Aff., Ex. 6.)

the United States District Court for the District of Puerto Rico to resolve all disputes arising out of *this Agreement*." (Wallace Aff., Ex. 3 (emphasis added).) And the first line of the SMA defines the SMA as "this Agreement." (*Id.* ("[t]his Software Maintenance Agreement ("Agreement").) sets forth the terms and conditions under which DataCard Corporation ("DataCard") is willing to provide support services for [certain software].") Because DataCard has not asserted a claim under the SMA, the exclusive forum-selection clause in the SMA does not apply in this case.

Moreover, the fact that the Subcontract Agreement contained another exhibit with a forum-selection clause, undermines Softek's argument. In particular, the End User Software License Agreement, an exhibit to the SMA, contains a non-exclusive forum-selection clause in favor of Minnesota: "[t]he parties hereby submit to the non-exclusive jurisdiction and venue in the state or federal courts of Hennepin County, Minnesota with regard to any conflicts or disputes arising out of this Agreement." (Wallace Aff., Ex. 5.) Even assuming that a forum-selection clause in one of these exhibits displaces the forum-selection clause in the Subcontract Agreement, Softek offers no explanation for why the SMA's forum-selection clause should control over the End User Software License Agreement's forum-selection clause.[9]

Instead, the Court finds that the parties' various agreements establish that the parties intentionally varied the forum-selection clauses depending on the particular

---

[9] Although at oral argument Softek pointed out that the End User Software License Agreement had expired, this fact does not change the Court's analysis.

agreement. In particular, Softek consented to jurisdiction in Minnesota and agreed to be governed by Minnesota law under two agreements—the Sales Order Form/Purchase Agreement and the End User Software License Agreement. Yet in two other agreements DataCard agreed to exclusive jurisdiction in Puerto Rico—the Mutual Non-Disclosure Agreement and the SMA. Finally, in another agreement, DataCard agreed to non-exclusive jurisdiction in Puerto Rico—the Second Mutual Non-Disclosure Agreement.

Here, DataCard brings its claim under the Subcontract Agreement. The forum-selection clause in the Subcontract Agreement provides that, "[t]he parties hereby expressly submit to the non-exclusive jurisdiction of and venue in the United States District Court for the District of Puerto Rico." (Wallace Aff., Ex. 4, ¶ 13.11.) Because jurisdiction in Puerto Rico is non-exclusive, this forum-selection clause is permissive, not mandatory. Mandatory forum-selection clauses require a case to be brought in an identified venue based on "specific language indicating the parties' intent to make jurisdiction exclusive." *Florida State Bd. of Admin. v. Lay Eng'g & Envtl. Servs., Inc.*, 262 F. Supp. 2d 1004, 1009 (D. Minn. 2003). Permissive forum-selection clauses, on the other hand, "constitute nothing more than a consent to jurisdiction and venue in the named forum and do not exclude jurisdiction or venue in any other forum." *Id.*

Here, the parties agreed to a permissive forum-selection clause in the Subcontract Agreement. As such, although disputes under the Subcontract Agreement may be brought in Puerto Rico, they are not required to be brought there. Thus, the permissive forum-selection clause in the Subcontract Agreement does not require the Court to dismiss this lawsuit.

### B.    Whether the Court Lacks Personal Jurisdiction Over Softek

Alternatively, Softek moves to dismiss for lack of personal jurisdiction. When personal jurisdiction has been challenged, the plaintiff has the burden to show that personal jurisdiction exists. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). However, to survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings; "the court may inquire, by affidavits or otherwise, into the facts as they exist." *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998) (quoting *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)). When determining whether the plaintiff has made a prima facie showing of personal jurisdiction, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. *See Digi-Tel*, 89 F.3d at 522.

### i.  Requirements for Establishing Personal Jurisdiction

In determining whether a court has personal jurisdiction over a non-resident defendant, a court must ordinarily satisfy both the requirements of the state long-arm statute and of federal due process.  *See id.*  But because the Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process, a court in Minnesota need only evaluate whether the requirements of due process are satisfied. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995).  Therefore, when analyzing most personal jurisdiction questions in Minnesota, courts may simply apply the federal standards.  *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotations omitted).  The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

A court may use one of two different analyses to determine whether the

defendants' contacts with the forum state establish personal jurisdiction. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003). In a general jurisdiction case, a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's courts for any purpose. *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1281 (8th Cir. 1991) (quoting *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 n.9, 416, 418–19 (1984)); *Valspar*, 495 N.W.2d at 411. Specific jurisdiction, on the other hand, requires that the defendant has "purposely directed" its activities at residents of the forum and that the litigation results from alleged injuries that "arise out of or relate to" those activities. *Wessels*, 65 F.3d at 1432 (quoting *Burger King*, 471 U.S. at 472).

Regardless of which analysis is used, the Eighth Circuit applies a five-factor test in determining whether the exercise of personal jurisdiction would pass constitutional muster: (1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of contacts; (3) the source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties. *See Wessels*, 65 F.3d at 1432. The first three factors are of primary importance, while the last two are "secondary factors." *Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 697 (8th Cir. 1995). The third factor distinguishes between specific and general jurisdiction. *See Digi-Tel*, 89 F.3d at 523 n.4 (citing *Wessels*, 65 F.3d at 1432 n.4). Softek contends that this Court lacks personal jurisdiction under the minimum-contacts analysis.

### ii.     Whether DataCard Has Made a Prima Facie Showing of Personal Jurisdiction

Viewing the evidence in the light most favorable to DataCard, the Court finds that DataCard has made a prima facie showing of both general and specific personal jurisdiction. Here, Softek's extensive and ongoing business relationship with DataCard satisfies the requirement of continuous and systematic contacts with the state of Minnesota. Softek has entered into numerous contracts with DataCard since 2002. Further, in at least two of those contracts, Softek agreed that any claim arising out of that agreement would be governed by Minnesota law and expressly submitted to the non-exclusive jurisdiction of the courts in Minnesota.

During the course of their relationship, Softek has had regular contact with DataCard in Minnesota through e-mail, telephone, web casts, faxes, and correspondence. Additionally, in September 2003, Guzmán and Salaman traveled to Minnesota to meet with DataCard representatives and to discuss the Smart-Card Project. According to DataCard, this trip led to the eventual execution of the Subcontract Agreement. The Subcontract Agreement also provided that Softek was required to include DataCard as an additional insured on its insurance policy.

Furthermore, pursuant to the Subcontract Agreement, the parties contemplated various duties to be completed or performed in Minnesota. In particular, DataCard manufactured the printers that Softek ordered and purchased in Minnesota and then shipped the printers to Puerto Rico. Additionally, the parties agreed under the

Subcontract Agreement that DataCard would train up to three Softek employees in Minnesota. Also, the software that DataCard provided to Softek was developed, in part, in Minnesota. Thus, the Court finds that Softek has purposely directed its activities at residents of the forum state and that the litigation results from alleged injuries that arise out of or relate to those injuries. Furthermore, the forum state has an interest in DataCard's lawsuit.

Viewing the evidence in the light most favorable to DataCard, the Court finds that DataCard has made a prima facie showing of personal jurisdiction. Accordingly, the Court denies Softek's Motion to Dismiss.

## II.     Motion to Transfer Venue

Alternatively, Softek contends that the Court should transfer venue to the United States District Court for the District of Puerto Rico pursuant to 28 U.S.C. § 1404(a). Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Generally, transfer under section 1404(a) "should not be freely granted." *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982), *overruled on other grounds, Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1310–11 (8th Cir. 1990). The party seeking transfer bears the burden of proof to show that the balance of factors "strongly" favors the movant. *United Mortgage Corp. v. Plaza Mortgage Corp.*, 853 F. Supp. 311, 315 (D. Minn. 1994).

As a preliminary matter, the venue to which transfer is requested must be one in

which the suit could have originally been sought. 28 U.S.C. § 1404(a); *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Additionally, pursuant to section 1404(a), the Court must consider "a number of case-specific factors," such as the presence or absence of a forum selection clause, convenience of the parties and witnesses, access to sources of proof, and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Here, the parties do not dispute that venue in the District of Puerto Rico is proper. Therefore, the Court will address the case-specific factors.

### A.    Forum-Selection Clause

Softek asserts that the Court should give substantial weight to the forum-selection clause in the SMA, which designates Puerto Rico as the exclusive forum. For the reasons stated above, the Court finds that the forum-selection clause in the SMA does not apply to this dispute. Rather, the permissive forum-selection clause in the Subcontract Agreement applies because DataCard has alleged a breach of the Subcontract Agreement. Because the applicable forum-selection clause is permissive, it does not preclude DataCard from bringing a lawsuit under the Subcontract Agreement in a different venue. *Florida State Bd. of Admin.*, 262 F. Supp. 2d at 1009. Further, courts give permissive forum-selection clauses less weight than mandatory forum-selection clauses when considering a motion to transfer. 15 Charles Alan Wright et al., *Federal Practice and Procedure* § 3854.1 (3d ed. 2007); *Prod. Fabricators, Inc. v. CIT Commc'ns Fin. Corp.*, 2006 WL 2085413, at *4 (D. Minn. July 25, 2006).

### B.     Factors under Section 1404(a)

#### i.     Convenience of Parties

A presumption in favor of a plaintiff's choice of forum exists. *Christensen Hatch Farms, Inc. v. Peavey Co.*, 505 F. Supp. 903, 911 (D. Minn. 1981). Section 1404(a) provides for transfer to a more convenient forum, "not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (citing *Van Dusen*, 376 U.S. at 646).

Softek contends that the material events giving rise to this dispute occurred in Puerto Rico. Specifically, Softek contends that the Smart-Card Project originated in Puerto Rico and was implemented in Puerto Rico. In response, DataCard contends that Softek merely attempts to shift the inconvenience of travel from Softek to DataCard.

The Court notes that the parties initially accepted the jurisdiction of the court in Puerto Rico and therefore gives the permissive forum-selection clause some weight. *See Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 58 (S.D.N.Y. 2001) ("Although a permissive forum selection clause is entitled to less weight than a mandatory one, the fact that both parties initially accepted the jurisdiction of the courts . . . must count."). Further, the Court acknowledges that the Smart-Card Project was implemented in Puerto Rico. But the Court also notes that DataCard manufactured printers, supplies, and performed other work under the Subcontract Agreement in Minnesota. Thus, not all of the operative events giving rise to this lawsuit occurred in Puerto Rico. Given this, the

16

Court will not disrupt the presumption in favor of DataCard's choice of forum, particularly given that DataCard resides in Minnesota. Ultimately, the Court finds that transferring venue to Puerto Rico would merely shift the inconvenience of litigating in a distant forum to DataCard. Therefore, the Court finds that this factor does not weigh in favor of transfer.

### ii.     Convenience of Witnesses

The convenience of witnesses is an important factor for the Court and the parties because it determines the "relative ease of access to sources of proof." *Nelson v. Master Lease Corp.*, 759 F. Supp. 1397, 1402 (D. Minn. 1991) (quotations omitted). In considering the issue of convenience to witnesses, courts have focused on a number of factors including the number of non-party witnesses, the location of all witnesses, and the preference of courts for live testimony as opposed to depositions. *Graff*, 33 F. Supp. 2d at 1121 (citing *Van Dusen*, 376 U.S. at 646). Mere numbers of witnesses are not determinative when considering the convenience-of-witnesses factor. *Id.* at 1121–22.

Softek contends that this factor weighs in favor of transfer because the majority of party and non-party witnesses reside in Puerto Rico and the physical evidence necessary to adjudicate this case is located in Puerto Rico. In response, DataCard specifically identifies sixteen DataCard employees that reside in Minnesota and summarizes each witnesses' possible testimony. Softek, however, has not specifically identified any party or non-party witnesses nor indicated what each witness would testify about. Further, Softek has not identified any specific evidence located in Puerto Rico. The Court finds

that Softek's unsupported allegations regarding this factor do not weigh in favor of transfer.

### iii.     Interests of Justice

The Court must also evaluate what venue will best promote the interests of justice. *Graff*, 33 F. Supp. 2d at 1122.  A number of relevant considerations include relative familiarity with the law to be applied, the relative ability of the parties to bear the expenses of litigating in a distant forum, judicial economy, and the plaintiff's choice of forum. *Id.*

Softek contends that DataCard is better suited to bear the costs of litigating in a distant forum.  Softek also contends that the United States District Court for the District of Puerto Rico is more familiar with the substantive law of Puerto Rico.  Additionally, Softek contends that the operative events giving rise to the lawsuit occurred in Puerto Rico.  In response, DataCard contends that even if the Court concludes that Puerto Rico law must govern DataCard's claim, such a factor should not disrupt DataCard's choice of forum.  Further, DataCard contends that this case is a simple breach-of-contract case that will not require the interpretation or application of any unique law of Puerto Rico.  DataCard also emphasizes that, as the Plaintiff, it chose to litigate in Minnesota.

The Court finds that the interests-of-justice factors do not weigh in favor of transfer. The Court can fairly apply the law of Puerto Rico if necessary. Additionally, the parties' respective ability to bear the expense of litigation does not require transfer. Further, although some operative events giving rise to this lawsuit occurred in Puerto Rico, the Court does not find that this fact overrides DataCard's choice of forum. Therefore, the Court finds that this factor does not weigh in favor of transfer.

After analyzing and weighing the section 1404(a) factors in light of the facts of this case, the Court finds that Softek has not met its burden of demonstrating that the balance of factors strongly favors their request to transfer the case to the District of Puerto Rico. Therefore, the Court denies the motion to transfer.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant Softek's Motion to Dismiss for Lack of Jurisdiction or in the Alternative Transfer Venue (Doc. No. 4) is **DENIED.**

Dated:  July 27, 2007                s/Donovan W. Frank
                                     DONOVAN W. FRANK
                                     Judge of United States District Court